BRITTON *v.* BOWDEN; *et vice versa.*

Nos. 12801, 12802.   September .13, 1939.
Rehearing denied October 13, 1939.

*Evins, Quillian & Evins* and *Powell, Goldstein, Frazer & Murphy,* for plaintiff.

*George C. Palmer, T. Hicks Fort, J. Madden Hatcher, John G. Cozart, Emmett Cartledge Jr., William H. Young Jr.,* and *W. Edward Swinson,* for defendant.

ATKINSON, Presiding Justice.   Judge G. Y. Tigner, judge of the city court of Columbus, whose term would extend to and include December 31, 1940, died on May 1, 1938, thus creating a vacancy in that office.   On May 6, 1938, the Governor appointed E. C. Britton to fill the vacancy, and administered to him the oath of

office. Britton immediately assumed the duties of the office. On May 17 the Governor issued and forwarded to him his commission effective May 6, 1938, to fill the unexpired term, and until his successor should be elected and qualified. At the next general election which was held on November 8, 1938, the ordinary, believing that the appointment by the Governor would then expire and that a successor should be elected, as indicated in an opinion by the attorney-general of the State, entered the name of T. L. Bowden on the official ballot as a candidate for election to the unexpired term of Tigner. Britton objected to the name of Bowden being put on the ballot, on the ground that there was no vacancy, as his appointment was for the whole of Tigner's unexpired term. Britton did not himself become a candidate at such election. Bowden was declared elected, and was commissioned by the Governor. He assumed the duties of the office. Thereafter, on November 23, 1938, Britton as a citizen, taxpayer, and claimant to the office instituted quo warranto proceedings against Bowden, to oust him and to regain possession of the office. The respondent demurred to the petition, and made answer which as several times amended substantially alleged that at the holding of the next general election there was a vacancy, and a part of Tigner's unexpired term yet remained to be filled by *election,* and that respondent's *election* and qualification in virtue thereof constituted him the lawful judge of the court. Explanatory of the appointment of Britton and issuance of commission to him, it was alleged that the Governor intended the appointment and commission to fill the vacancy only until the next general election (as was stated in the executive order of appointment), at which time the unexpired term should be filled by election; and that the appointment and commission of Britton for the full unexpired term of Tigner was by clerical error, and that after discovery of the error a corrected commission was forwarded to Britton on May 20, 1938, with request that he return the former commission, which he failed to do. It was further alleged, that the respondent was induced to become a candidate at such general election by certain conduct and declarations of Britton, both by letter and through the public press, declaring his intention to become a candidate at the Democratic primary election preliminary to the general election, and to be bound by the result in the primary election for said un-

expired term, and Britton's actual entry as a candidate in said primary election and his defeat by respondent, who was also a candidate in such primary election; that respondent was so induced to enter the primary election, and incurred stated substantial expense in conducting his campaign; that in virtue of all such conduct and declarations by Britton he abandoned all right to the office; and that he is now estopped from attacking respondent's right to the office. The applicant demurred to the answer as amended. The judge overruled all demurrers to the petition and to the answer. After introduction of stipulations of fact, and of parol and documentary evidence, it was agreed by the parties that only questions of law were involved; and the judge withdrew the case from the jury. Thereafter, on evidence conforming to the pleadings of the respective parties, as substantially stated above, a judgment for the respondent was rendered. The applicant excepted, and the respondent by cross-bill excepted to the overruling of the demurrers to the petition.

In section 1 of the act creating the city court of Columbus (Ga. L. 1884-85, p. 455) it is declared, in part: "That a city court be and the same is hereby created and established in the City of Columbus." In section 2 it is declared, in part: "That there shall be a judge of said city court, who shall be appointed by the Governor, by and with the advice and consent of the Senate, who shall hold his office for the term of four years. All vacancies in said office shall be filled by appointment by the Governor for the balance of the unexpired term; but should a vacancy occur when the Senate shall not be in session, the Governor shall appoint to fill such vacancy, and submit such appointment to the Senate which shall next thereafter convene." In sections 1 and 4 of the act approved August 18, 1911 (Ga. L. 1911, p. 238), it is declared: "That the judge . . of the city court of Columbus shall be elected by the qualified voters of Muscogee County as hereinafter provided," and that "The terms of office of the judge . . elected as aforesaid, . . and their successors, shall be four years, and until their successors are elected and qualified." Both acts refer to the office of judge of the same court. The act of 1884, creating the office, provides for *appointment* of judge for full terms of four years each, and, in case of vacancy, for appointment by the Governor of judge to fill the balance of the unexpired term.

The act of 1911 provides for *election* of judge by the qualified voters of Muscogee County for full terms of four years each, and until their successors are elected and qualified, but omits all reference to vacancies or filling of vacancies. The provision for election by the voters for full terms provides a different manner of selecting a judge from appointment by the Governor, and to that extent the act of 1911 is repugnant to the act of 1884, and impliedly repeals and makes substitution for so much of the latter act as provides for appointment of judge by the Governor for full terms of four years. The substitution is to elect the judge for full terms of four years each, and until his successor is elected and qualified. But a question for decision is whether there is implied repeal of so much of the act of 1884 as provides for appointment of judge by the Governor in instances of vacancy to fill the balance of the unexpired term. Repeals of statutes by implication are generally not favored; and in order to bring about that result the legislative intent to repeal must be ascertained from the language of the act, and must be clear, manifest, and irreconcilable with intent not to repeal. *Griggs* v. *Macon,* 154 *Ga.* 519 (3) (114 S. E. 899) ; *Cornwell* v. *Atlanta Trust Co.,* 177 *Ga.* 303 (170 S. E. 194) ; *McGinty* v. *Gormley,* 181 *Ga.* 644 (183 S. E. 804). See also *MacNeill* v. *Steele,* 186 *Ga.* 792, 794 (199 S. E. 99). While recognizing the above general rule applied in the several cited cases, it was held in *Horn* v. *State,* 114 *Ga.* 509 (40 S. E. 768), "that when the legislature intends to revise a former act or charter or to deal exhaustively with the subject of all or a part of the original act, and a portion of the original act is left out, such omitted portion is repealed by implication." This principle has been recognized in *Friedman* v. *Mizell,* 164 *Ga.* 1 (137 S. E. 400) ; *Peacock* v. *Larsen,* 180 *Ga.* 444 (178 S. E. 922) ; *City of Atlanta* v. *Goodman,* 183 *Ga.* 834 (189 S. E. 829); *Fidelity Fruit & Produce Co.* v. *Atlanta,* 183 *Ga.* 698 (189 S. E. 527) ; *MacNeill* v. *Steele,* supra.

In view of the pronouncement in the *Horn* case, the pertinent portions of the act of 1911 will here be more fully stated. Its caption is: "An act to provide for the election of the judge and solicitor of the city court of Columbus by the qualified voters of Muscogee County, to fix the terms of office of the judge and solicitor of said court, to extend the terms of the present incum-

bents, so as to provide for the election of said officers at the same time, in the same manner, and to make their terms of office commence at the same time; and for other purposes." Section 1. "Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same, that the judge and solicitor of the city court of Columbus shall be elected by the qualified voters of Muscogee County as hereinafter provided." Section 4. "Be it further enacted, that the terms of office of the judge and solicitor of said court elected under the provisions of this act at the general election in 1912 shall commence on the first day of January, 1914, and shall expire on the 31st day of December, 1916; and that at the general election to be held in 1916, and every four years thereafter, for Governor and State-House officers and members of the General Assembly and other county officers, a judge and solicitor of the city court of Columbus shall be elected by the qualified voters of Muscogee County, in the same manner and at the same time as said above-named officers are elected, and return of the election of such judge and solicitor shall be made in the same manner as return of the election of members of the General Assembly and to the same authority. The terms of office of the judge and solicitor elected as aforesaid in 1916, and their successors, shall be four years, and until their successors are elected and qualified." Sec. 5. "Be it further enacted, that when elected as herein provided, said judge and solicitor shall be duly commissioned by the Governor, and shall take the oath of office and qualify as now provided by law." Sec. 6. "Be it further enacted, that all laws and parts of laws in conflict with this act be and the same are hereby repealed." It does not appear from the language of this act that the legislature intended to revise the whole original act of 1884. The intent was in substance, though not expressed in exact words, to amend it by repeal of so much thereof as provided for appointment of judge for full terms by the Governor and substitute in lieu thereof the provision for election of judges for full terms by the qualified voters of the county. Neither does the act deal exhaustively with the matter of selecting judges; for it omits all reference to vacancies and appointments by the Governor in instances of vacancy to fill the balance of the unexpired term, subject to confirmation by the Senate, as provided in the original act. The natural and reasonable inference is that the legislature

did not intend to disturb that manner of filling vacancies. A different construction of the act of 1911 could not be aided by resort to article 5, section 1, paragraph 14, of the constitution (Code, § 2-2614), which declares: "When any office shall become vacant, by death, resignation, or otherwise, the Governor shall have power to fill such vacancy, unless otherwise provided by law," and the general statute as embodied in the Code, § 40-301, which provides: "The Governor shall appoint all officers and fill all vacancies, unless otherwise prescribed by the constitution and laws." These provisions of the constitution and the general law do not purport to repeal any law, and only by inference could enter into and become parts of special law, and by their terms do not apply in instances "where it is otherwise prescribed by law." In these views it must be held that the act of 1911, considered separately or in connection with the above provisions of the constitution and general law, did not repeal expressly or by implication so much of the act of 1884 as provided in instances of vacancy for appointment of judges of the city court of Columbus to fill the balance of unexpired terms. Neither was this part of the act of 1884 contemplated by or repealed by the Code, § 40-302, or the act of 1938, which are set forth and construed in the third and fifth divisions of this opinion.

■ While, under the principles stated in the preceding division, the act of 1911, supra, repealed by implication so much of the special act of 1884, supra, as related to *appointment* of a judge for *full term* and substituted therefor the provision for *election* of a judge for full term and until his successor shall be elected and qualified, it left intact so much of the special act of 1884 as provided for appointment of a judge to fill a vacancy for the balance of the unexpired term. Consequently there is no provision of law for *election* of a judge of the court to fill vacancies for the balance of unexpired terms. This ruling disposes of the question adversely to the respondent as to his right to the office, claiming by election and not in virtue of an appointment by the Governor by and with consent of the Senate.

■ Another question is as to the right of the relator to the office. A general law is found in the Code, § 40-302, the first clause of which is taken from the act of 1871 (Ga. L. 1871, p. 284), and the balance or second clause is taken from the act of 1931 (Ga. L. 1931, pp. 7, 45). The Code section, with the

separate clauses designated by inserted numbers in parenthesis, is as follows:

(1) "In case of a vacancy from any cause in any office, the full term of which, by the constitution, is to be filled by the Governor with the advice and consent of the Senate, the Governor shall appoint and commission some qualified person to supply it until the next meeting of the General Assembly, when said vacancy shall be filled in the manner described in the constitution for filling the full term of such office. All vacancies which may occur during the session of the General Assembly, or may then exist, shall be filled in pursuance of the provisions of this section. (2) "Where it shall be incumbent upon the Governor to appoint a public officer subject to confirmation of or by and with the advice and consent of the Senate, the office shall be deemed vacant at the expiration of the term of such officer, and he shall not hold over until his successor shall have been appointed and confirmed. The Governor may make an appointment to fill such vacancy ad interim, and the appointee shall hold office until the Senate shall next convene, when the Governor shall submit an appointment to fill such vacancy to the Senate for confirmation; the appointee, if confirmed, shall hold over until the expiration of the term for which he was appointed: Provided, however, the Governor shall not appoint ad interim any person previously rejected by the Senate: and provided further, that the Governor shall submit to the Senate whenever in session the names of appointees to fill all vacancies which shall occur within eight months after the date fixed for the convening of the Senate."

The first clause of this law can not be applied to the office of judge of the city court of Columbus, because (a) it expressly applies to vacancy in an office the *full term* of which, by the constitution, *is to be filled by the Governor* with the advice and consent of the Senate, whereas since passage of the act of 1911, as hereinabove indicated, the judge is not to be appointed for the full term by the Governor, but is to be *elected* by the qualified voters of the county; (b) it has reference to and requires filling vacancies in offices "in the manner described in the constitution for filling the full term of such office," whereas *the constitution* does not describe the manner of filling the office of judge of the city court of Columbus. Neither can the second clause be applied to the office

in question, because (a) the object of that clause is to prevent hold-over tenure. To accomplish this the act declares vacancy in the office *after term,* and provides for "ad interim" appointments by the Governor to cover the period intervening between expiration of such term and appointment and confirmation of a successor. Thus the subject-matter is entirely different from the matter involved in the instant case, which is filling a vacancy not arising after expiration of a term by ad interim appointment, but cutting off existing tenure of an incumbent appointed to fill a vacancy for the balance of an unexpired full term, caused by death of the original incumbent, for such full term. This provision of the act was applied in *Kaigler* v. *Floyd,* 187 *Ga.* 441 (supra). The pertinent facts of that case were that Floyd had been duly appointed and confirmed by the Senate as judge for a full term, according to the special act of the legislature creating the county court of Quitman County, which provided for a tenure of four years and until a successor should be appointed and qualified; and in case of vacancy caused by death, resignation, or otherwise, provided for appointment for the unexpired term. At expiration of the appointee's regular term he was reappointed for another full term, but this second appointment failed to receive confirmation by the Senate at the next meeting of the General Assembly. After adjournment of the Senate the Governor, on the basis of a vacancy, appointed Kaigler for the balance of the term to which Floyd's second appointment related. This court ruled, on the basis of this act and the act of 1938 (Ga. L. 1937-1938, p. 203) that the hold-over principle as applied in *Shackelford* v. *West,* 138 *Ga.* 159 (74 S. E. 1029), relied on by Floyd, was no longer applicable, and that a vacancy did exist after failure of the Senate to confirm, which could be filled by appointment; and that in virtue of Kaigler's appointment to fill such vacancy he was entitled to the office. The exact ruling was: "In view of the provisions of section 116 of the act known as the State government reorganization law (Ga. L. 1931, p. 7, now codified as a part of § 40-302), and of section 2 of the act approved February 12, 1938 (Ga. L. Ex. Sess. 1937-1938, page 203), a vacancy existed on March 17, 1938, in the office of judge of the county court of Quitman County which the Governor was authorized to fill by appointment, the term of the incumbent originally appointed by the Governor and confirmed by

the Senate having expired. The decision rendered in *Shackelford* v. *West* [supra], is not controlling, because of the material change in the law on which it was based." In the opinion, after setting forth the special and general laws mentioned above, and reliance by Floyd's attorney upon the case of *Shackelford* v. *West,* supra, and the "Code, § 89-105, to the effect that all officers of this State must discharge the duties of their office until their successors are commissioned and qualified," and making special mention of section 116 of the act of 1931, supra (being the second clause of the above-quoted Code § 40-302), it was stated that said act "repealed by implication that part of the Code section, so far as concerned those instances where it was incumbent on the Governor to make an appointment subject to the Senate's confirmation, which declared that all officers of this State shall hold over until their successors are commissioned and qualified. The provision in the act of August 28, 1931, above referred to, was in effect re-enacted by the act approved February 12, 1938 (Ga. L. 1937-1938, p. 203), wherein it is declared that all appointments authorized by law to be made by the Governor and not submitted to or confirmed by the State Senate since January 1, 1937, or at the special session of 1937-1938, 'shall have automatically ceased to hold such office and the same shall be vacant and it shall be the duty of the Governor to fill such vacancy,' etc. In view of the statutory changes made in our law since the decision in *Shackelford* v. *West,* supra, we hold that a vacancy did exist in the office of county judge of Quitman County, that the Governor was empowered to make an appointment to fill it, and that the trial court erred in adjudging that Floyd was the rightful holder of the office, and in ousting Kaigler therefrom. See, in this connection, *Stanley* v. *Sims,* 185 *Ga.* 518, 524 (195 S. E. 439)."

The ruling quoted here more clearly illustrates the "hold-over" principle and "ad interim" appointments to which allusion has been made above as showing a different matter from that involved in the instant case,—namely, filling a vacancy not arising after expiration of a term by ad interim appointment, but cutting off existing tenure of an incumbent appointed to fill a vacancy for the balance of the unexpired full term, caused by death of the original incumbent for such full term. The foregoing decision does not rule that the whole of the part of the Code, § 89-105, that was

stated in effect, was repealed by implication, or state a principle under which the special act of 1884 creating the city court of Columbus, conferring the power of appointment to fill vacancies for the balance of unexpired terms in the office of judge of that court, should be held impliedly repealed by the amendatory act of 1911, supra, or by the subsequent general acts of 1931 and 1938 mentioned in the opinion. The decision, in so far as it could bear upon any ruling in this or any other division of this opinion, does not, in view of the special act of 1884 creating the city court of Columbus and the difference of facts and the questions involved in that and the instant case, militate against any of the rulings in this case. As neither of the two clauses of Code § 40-302, quoted above, is applicable to the instant case involving appointment to fill a vacancy arising before expiration of a full term under the special act of 1884, supra, its provisions can not limit the term of the appointee to the meeting of the next General Assembly.

■ In the special act of 1884 creating the city court of Columbus, as set forth in the first division of this opinion, after providing for appointment by the Governor to fill vacancies for the balance of unexpired terms, it is declared that "should a vacancy occur when the Senate shall not be in session, the Governor shall appoint to fill such vacancy, and submit such appointment to the Senate which shall next thereafter convene." In the circumstances stated, it would of course be the duty of the Governor under this act to submit his appointment to the next convening of the Senate. What would be the effect in this case of his failure to do so, or the failure of the Senate to confirm the appointment without its having been submitted by the Governor, is not for decision, though it has been argued in the briefs of the attorneys. The reason is that it appears from the pleadings and facts as to dates of convenings and adjournments of the Senate, which are judicially known to the courts, that the appointment was made when the Senate was not in session, and that the quo warranto proceedings were instituted and tried before beginning of the next session of the Senate, and the final judgment was rendered before adjournment of the session. Consequently the matter of failure of the Governor to submit the appointment to the next convening of the Senate, or failure of the Senate during such session to confirm the appointment without such submission, were non-existent; and could

not have entered into the case in the trial court, or in the Supreme Court on review. As the case stood in the trial court the appointment was effective subject to confirmation by the next session of the Senate, and consequently the relator's right to the office under the said special act of 1884 had not terminated by failure of confirmation by the Senate. Under this special act of 1884 the power conferred upon the Governor to appoint to fill a vacancy was expressly for the balance of the unexpired term. It was not left to his discretion to appoint for a less time or to make appointments to fill such vacancy by piecemeal. If by mistake of law the Governor intended to make the appointment to expire at the next general election, which would be before expiration of such balance of the unexpired term, but inadvertently made the appointment as provided by the statute for the entire balance of the unexpired term, the fact that he had made such mistake and appointed for a longer time than he intended would be unimportant, because the law is controlling, and the appointment could not be for a different time than that provided by law. See *Motes* v. *Davis*, 188 *Ga.* 682 (4 S. E. 2d, 597).

■  The act approved February 12, 1938 (Ga. L. 1937-1938 Extraordinary Session, p. 203), declares: 1. "That all appointments made by the Governor to public offices created and established by the laws of this State shall be made subject to confirmation by the State Senate. And it shall be the duty of the Governor to submit to the Senate the names of all such appointees appointed prior to the convening of the General Assembly or during the session, either regular or special, of the General Assembly; and unless such appointees are confirmed by the Senate, they shall cease to hold the office to which they have been appointed, and the name of another appointee shall be immediately submitted by the Governor to the Senate to fill such office." 2. "That the names of all appointees to offices created and established by law, and made by the Governor since January 1, 1937, shall be by the Governor submitted to the Senate for confirmation; and should the Senate fail to confirm any of such appointees, they shall no longer hold office, and a successor shall be appointed and submitted for confirmation by the Senate immediately upon the failure of the Senate to confirm any such appointee. Provided, that all members of all boards, commissions, and bureaus as well as other appointees au-

thorized by law to be made by the Governor, and not submitted to or confirmed by the State Senate since January 1, 1937, or at this special session of 1937-1938, shall . . automatically cease to hold such office and the same shall be vacant, and it shall be the duty of the Governor to fill such vacancy by appointment and approval as herein provided, upon the approval of this act; and provided further, that the provisions of this act shall not apply to appointments made to county, circuit, or district offices to fill vacancies temporarily pending the holding of elections to fill local vacancies." The first section applies to appointments without reference to dates, and makes no reference whatever to filling vacancies. The second section applies to offices created since January 1, 1937, and appointments to fill such offices, and requires confirmation of such appointments by the Senate, and contains a proviso that as to "all members of all boards, commissions, and bureaus as well as other appointees authorized by law to be made by the Governor, and not submitted to or confirmed by the State Senate since January 1, 1937, or at this special session of 1937-1938, shall . . automatically cease to hold such office and the same shall be vacant, and it shall be the duty of the Governor to fill such vacancy by appointment and approval as herein provided." The first mention of vacancy and only mention of appointment to vacancy is found in this proviso of section 2. Construing sections 1 and 2 of this act together and with the context, it is manifest that they contemplated original appointments and only vacancies in such offices as have been created since January 1, 1937, and did not apply to appointments to such vacancies as are provided for in the special act of 1884 creating the city court of Columbus.

■ It is declared in the Code, § 89-501: "All offices in the State shall be vacated. 1. . . By the death of the incumbent. 2. . . By resignation, when accepted. . . 7. . . By abandoning the office and ceasing to perform its duties, or either." The facts that the relator by conduct and declarations, by letter and through the public press, of his intention to become a candidate at the Democratic primary election preliminary to the next general election, and to be bound by the result in the primary election for said unexpired term, and his actual entry into the primary election, which induced the respondent to enter as an opposing can-

didate for nomination to said office and to incur substantial expense, and the further facts that relator, being defeated in said primary election, did not enter the general election, did not purport to be nor did they amount to abandonment of the office held by him under his appointment for the balance of the unexpired term.

■ It would be erroneous, on the basis of the above special laws and general laws and provisions of the constitution, regarded collectively, to rule that the term of the relator to fill the vacancy involved in the instant case would expire and a successor should be elected at the next general election. In the light of the several rulings expressed in the preceding divisions, it must be held that the relator was duly appointed by the Governor to fill the balance of the unexpired term in which there was a vacancy caused by death of Judge Tigner; that for reasons stated in the fourth division of this opinion the appointment had not failed for want of confirmation by the Senate as required by the act of 1884 creating the city court of Columbus, and had not been abandoned, but was effective at the time of institution of the quo warranto proceedings, and prima facie showed a right in the relator to the office.

■ Another question for decision is whether, conceding the right of relator to the office, as has been held in the foregoing seventh division, he is estopped by his declarations and conduct mentioned substantially in the sixth division above, from asserting such right against the respondent in this quo warranto proceeding. The declarations that relator would enter and abide the result of the Democratic primary election, and his conduct connected therewith, clearly refer to what he would do in the future, and as to abiding the result of the election were at most promissory in character. It is declared in the Code, § 38-114: "Presumptions of law are sometimes conclusive, and an averment to the contrary shall not be allowed. These are termed estoppels, and are not generally favored. Among these are . . solemn admissions made in judicio, and *other admissions* upon which other parties have acted, either to their own injury or the benefit of the persons making the admissions; and similar cases where it would be more unjust and productive of more evil to hear the truth than to forbear the investigation." In *Fields* v. *Continental Insurance Co.,* 170 *Ga.* 28

(2-b) (152 S. E. 60), it was said: "'The doctrine of estoppel by representation is ordinarily applicable only to representations as to facts either past or present, and not to promises concerning the future which, if binding at all, must be binding as contracts.' 21 C. J. 1142, § 144; Union Mutual Life Ins. Co. v. Mowry, 96 U. S. 544 (24 L. ed. 674); *Morris* v. *Orient Insurance Co.,* 106 *Ga.* 472, 475 (33 S. E. 430); *Johnson* v. *Sun Fire Insurance Co.,* 3 *Ga. App.* 430, 432 (60 S. E. 118); Bigelow on Estoppel (6th ed.), 636 et seq." At the time of the declarations and conduct the relator held the office for the balance of the unexpired term which would not end until December 31, 1940, more than two years after the next general election. He was required by statute all during that time to "discharge the duties of" that office. Code, § 89-105. These were duties owed to the public, from which he could not be relieved so long as he held the office. The only way he could have been relieved of such duties would have been to vacate the office by one of the seven ways provided by statute in the Code, § 89-501. None of these includes the making of declarations and conduct mentioned above, inducing another to enter an election and to incur expense in reliance upon such declarations and conduct. All of this was matter of law, and as such known to respondent. If the relator had expressly agreed with the respondent to submit the question of tenure in the office he already had, for the balance of the unexpired term, to the fortunes of the Democratic primary election at which both should be candidates and incur expense, and that he would abide by the result of such election, the contract would have been an unlawful shirking of public duty, opposed to public policy, and unenforceable. If he could not have escaped his duties to the public by express contract, he could not do so by declarations and conduct implying substantially the same thing. The respondent was bound to know that any such arrangement would be contrary to public policy, and being so could not be enforced. See *Motes* v. *Davis,* supra, citing 22 R. C. L. 538, and other authorities. It has been said: "Not even estoppel can legalize or vitalize that which the law declares unlawful and void. If so, the conduct of individuals, whether independently or collusively, could render any and all laws invalid and impotent." *Flournoy* v. *Highlands Hotel Co.,* 170 *Ga.* 467, 471 (153 S. E. 26).

It must be held that in the circumstances the relator was not estopped from asserting his right to the office. The case differs on its facts from *Dorsey* v. *Ansley,* 72 *Ga.* 460, and cit., and consequently is not controlled by the rulings therein. In the *Dorsey* case the relators were not seeking to sustain any right to unexpired terms already held by them, imposing duties owed to the public, which they could not ignore; but were claiming offices for ensuing full terms which had not commenced, and no public duties had been imposed. The municipal councilmen by mistake of law had called the election to be held on a date later than the date provided for by the municipal charter. Certain of the relators and one other became candidates, and were defeated. After such defeat the councilmen, disregarding the election, called another election, at which the relators received the only votes cast. They instituted quo warranto proceedings against respondents who were the successful candidates in the first election. The decision holding the relators estopped could be no broader than the facts, and, being substantially different as indicated above, is not controlling on the question of estoppel in the instant case.

■ ■ The rulings announced in the ninth and tenth headnotes do not require elaboration.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except Reid, C. J., disqualified.*

GRICE, Justice, concurring specially. I concur in the judgment and in all that is said in the excellent opinion prepared by Mr. Presiding Justice Atkinson, except that under my view the present record does not call for the ruling made in the seventh division, since Judge Britton was appointed when the Senate was not in session, nor did it convene at any time thereafter until after this suit was filed. Until a case arises calling for such, I prefer to leave open the question there discussed.